██ In the Matter of DELKAP MANAGEMENT, INC., et al., Petitioners/Cross Respondents, v NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent/Cross Petitioner, et al., Respondent. [42 NYS3d 254]—

Proceeding pursuant to CPLR article 78 and Executive Law § 298 to review a determination of the Acting Commissioner of the New York State Division of Human Rights dated December 24, 2013, which adopted the recommendation and findings of an administrative law judge dated September 24, 2013, made after a hearing, finding that the petitioners/cross respondents discriminated against the complainant in the terms, conditions, and privileges of a housing accommodation because of a disability and wrongfully retaliated against her in violation of Executive Law § 296, and awarding the complainant $5,000 in compensatory damages for mental anguish and humiliation and $10,000 in punitive damages, assessed a $5,000 penalty upon each petitioner/cross respondent payable to the State of New York, and directed the petitioners/cross respondents to create and implement standard policies and procedures to evaluate shareholders' requests for reasonable accommodations and to develop and implement training to prevent unlawful discrimination, and cross petition by the New York State Division of Human Rights pursuant to Executive Law § 298 to confirm the determination.

Adjudged that the petition is granted to the extent that (1) so much of the determination as adopted the finding that the petitioners/cross respondents discriminated against the complainant on the basis of her disability is annulled, (2) so much of the determination as awarded the complainant compensatory damages in the sum of $5,000 and punitive damages in the sum of $10,000 is annulled, and (3) so much of the determination as assessed a civil penalty upon each petitioner/cross respondent payable to the State of New York in the sum of $5,000 is annulled; and the cross petition is granted to the extent of confirming the directives that the petitioners/cross respondents create and implement standard policies and procedures to evaluate shareholders' requests for reasonable accommodations and develop and implement training to prevent unlawful discrimination; the petition and the cross petition are otherwise denied, the determination is otherwise confirmed, and the proceeding is otherwise dismissed on the merits, without costs or disbursements, and the matter is remitted to the New York State Division of Human Rights for

(1) the imposition of a new award for compensatory damages in an amount not to exceed the sum of $2,500, (2) the imposition of a new award for punitive damages in an amount not to exceed the sum of $2,500, and (3) the imposition of a new civil penalty upon each petitioner/cross respondent payable to the State of New York in an amount not to exceed the sum of $2,000.

Since 1988, the complainant had been a shareholder in the petitioner/cross respondent cooperative housing corporation, Lindenwood Village Section C Cooperative Corp. (hereinafter the Coop), which is governed by its Board of Directors (hereinafter the Board). The complainant was diagnosed with rheumatoid arthritis in 2007, which makes walking difficult, as well as with, supraventricular tachycardia and cardiac arrhythmia in 2008, which cause palpitations, lightheadedness, and sleeplessness. In mid-August 2010, in violation of the Coop's "no dogs" policy, the complainant acquired a dog when her daughter, together with her dog, moved into the complainant's apartment. On August 30, 2010, the complainant requested that the Board provide her a reasonable accommodation by permitting her to keep the dog in her apartment due to a disability. As is relevant to this matter, the complainant also has a disability certificate on her vehicle and the Board had provided the complainant a parking space that was close to her apartment. The Board advised the complainant to submit a doctor's note about her disability to both the Board and the petitioner/cross respondent Delkap Management, Inc. (hereinafter Delkap, and together with the Coop, the petitioners). That same day, the complainant's physician, Dr. Norman Riegel, sent a letter to the Board and Delkap, in which he recommended that the complainant keep the dog and also her parking space near her apartment due to her disability. The petitioners subsequently refused to consider the complainant's request for a reasonable accommodation, directed her to remove the dog, and fined her $740, which consisted of $300 for a dog fine and $440 for the petitioners' legal fees.

Immediately thereafter, the complainant filed an administrative complaint with the New York State Division of Human Rights (hereinafter SDHR), charging, inter alia, that the petitioners had engaged in unlawful discriminatory practices relating to housing in violation of Executive Law article 15 (hereinafter the Human Rights Law). The petitioners responded by (1) notifying the complainant that she would be evicted if the dog remained, and (2) revoking the complainant's parking privileges, which were ultimately reinstated nine days later. In

addition, the petitioners refused to accept the complainant's maintenance check and filed a petition in court commencing a holdover eviction proceeding against her.

At the ensuing hearing before the SDHR, the complainant presented unsworn letters from Dr. Riegel, along with his responses to a questionnaire sent to him by the SDHR. The complainant testified that, since obtaining the dog, her cardiac arrhythmia, which caused her to have rapid heart rate and experience palpitations, had significantly decreased; her ability to sleep had improved, resulting in her feeling less tired during the day; her discomfort due to her rheumatoid arthritis had improved because she was more physically active with the dog; and the dog decreased her stress, helping to improve the symptoms caused by her rheumatoid arthritis and cardiac arrhythmia.

Sometime after the hearing concluded, the petitioners directed the complainant to immediately remove her dog from her apartment contending, erroneously, that the SDHR had issued a final order in their favor. The complainant thereafter moved out of her apartment with the dog.

In a recommendation and findings dated September 24, 2013, an administrative law judge (hereinafter ALJ) of the SDHR determined that the Coop had discriminated against the complainant in the terms, conditions, and privileges of her housing on the basis of her disability, and that she should have been allowed to keep the dog in her apartment as a reasonable accommodation for her disability. The ALJ also determined that the respondents retaliated against the complainant for opposing the discrimination and filing a complaint with the SDHR. The Acting Commissioner of the SDHR adopted the ALJ's recommendation and findings and directed the petitioners to pay $5,000 to the complainant in compensatory damages for mental anguish and $10,000 in punitive damages, assessed a $5,000 penalty upon each petitioner payable to the State, and directed the petitioners to create and implement standard policies and procedures to evaluate shareholders' requests for reasonable accommodations and to develop and implement training to prevent unlawful discrimination. The petitioners then commenced this CPLR article 78 proceeding to annul the determination, and the SDHR filed a cross petition to confirm the determination.

To establish that a violation of the Human Rights Law occurred and that a reasonable accommodation should have been made, the complainant was required to demonstrate that she is disabled, that she is otherwise qualified for the tenancy, that

because of her disability it is necessary for her to keep the dog in order for her to use and enjoy the apartment, and that reasonable accommodations could be made to allow her to keep the dog (*see* Executive Law § 296 [2] [a]; *Matter of Kennedy St. Quad, Ltd. v Nathanson*, 62 AD3d 879, 880 [2009]; *Matter of One Overlook Ave. Corp. v New York State Div. of Human Rights*, 8 AD3d 286, 287 [2004]).

Here, the complainant demonstrated that she was disabled and was a shareholder in the Coop. She also submitted evidence that the dog helped her with her symptoms by easing her stress and causing her to be more active. Nonetheless, the complainant failed to present medical or psychological evidence sufficient to demonstrate that the dog was actually necessary in order for her to enjoy the apartment. Notably, the complainant had resided in the apartment for more than 20 years without the dog. Moreover, the complainant was diagnosed with her disability several years prior to the dog being brought to the apartment by the complainant's daughter when she moved in with the complainant. The dog was present in the apartment for only two weeks before the complainant asked the Board for a reasonable accommodation. Accordingly, the SDHR's determination of discrimination based on her disability was not supported by substantial evidence (*see Matter of Kennedy St. Quad, Ltd. v Nathanson*, 62 AD3d at 880; *Matter of 105 Northgate Coop. v Donaldson*, 54 AD3d 414, 416 [2008]; *Matter of One Overlook Ave. Corp. v New York State Div. of Human Rights*, 8 AD3d at 287).

Notwithstanding, the SDHR's determination that the petitioners retaliated against the complainant for engaging in protected behavior was supported by substantial evidence (*see e.g. La Marca-Pagano v Dr. Steven Phillips, P.C.*, 129 AD3d 918, 921-922 [2015]; *Matter of Murphy v Kirkland*, 88 AD3d 795, 796 [2011]; *Beharry v Guzman*, 33 AD3d 742, 743 [2006]). To establish a prima facie case of retaliation, the complainant was required to show that (1) she has engaged in protected activity, (2) the petitioners were aware that she had participated in such activity, (3) she suffered an adverse action taken by the petitioners, and (4) there is a causal connection between the protected activity and the adverse action (*see La Marca-Pagano v Dr. Steven Phillips, P.C.*, 129 AD3d at 920; *Matter of Murphy v Kirkland*, 88 AD3d at 796). Upon making this initial showing, the petitioners then were required to present legitimate, independent, and nondiscriminatory reasons to support their actions (*see La Marca-Pagano v Dr. Steven Phillips, P.C.*, 129 AD3d at 920; *Matter of Murphy v Kirkland*, 88 AD3d

at 796). If the petitioners met that burden, the complainant would then have to show that the reasons given by the petitioners were merely a pretext (*see Matter of Murphy v Kirkland*, 88 AD3d at 796).

Here, the complainant established that she participated in the protected activity of filing an SDHR discrimination complaint against the petitioners, the petitioners were aware of this action, and there was a causal connection between the protected activity and the petitioners' retaliatory conduct, which included taking away the complainant's designated parking space for a nine-day period, refusing to accept her maintenance checks, filing eviction proceedings against her, falsely informing her that the SDHR had ruled in the petitioners' favor, and directing her to immediately remove her dog from her apartment (*see e.g. Mitchell v TAM Equities, Inc.*, 27 AD3d 703, 706 [2006]). The complainant established that the adverse action taken by the petitioners caused her to be confined to her home for the nine days that the designated parking space was taken from her because of the distance between her home and the alternative, designated space assigned to her, that she had to defend against eviction proceedings, and that she was directed to immediately remove the dog which caused her to move out of her apartment with her dog. In response to the complainant's prima facie showing of retaliation, the petitioners failed to present legitimate, independent, and nondiscriminatory reasons to support their actions (*see e.g. Matter of Murphy v Kirkland*, 88 AD3d at 796). Accordingly, we deny so much of the petition as sought to annul the determination of the SDHR regarding retaliation.

Although we find that the SDHR appropriately awarded both compensatory and punitive damages, as well as a civil fine against the petitioners, we find the amounts awarded were excessive, as this Court has determined that the complainant did not establish by substantial evidence that the petitioners discriminated against her due to her disability (*see e.g. State Div. of Human Rights v Dynasty Hotel*, 222 AD2d 263, 263-264 [1995]). With respect to the award for compensatory damages, an award for mental anguish must be " 'reasonably related to the wrongdoing, supported by substantial evidence, and similar to comparable awards for similar injuries' " (*Matter of Murphy v Kirkland*, 88 AD3d at 797, quoting *Matter of Columbia Sussex Corp. v New York State Div. of Human Rights*, 63 AD3d 736, 736 [2009]). "In order to sustain an award of damages for mental anguish, there must be evidence that the mental anguish was caused by discriminatory practice, and there must

be some evidence of the magnitude of the injury" (*Matter of Van Cleff Realty v New York State Div. of Human Rights*, 216 AD2d 306, 307 [1995]). Here, the petitioners retaliated against the complainant by revoking her parking privileges in connection with her designated parking space after she filed an action with the SDHR. The petitioners also moved to evict the complainant and caused her to move out of her home by informing her, erroneously, that the SDHR had ruled against her and that she had to immediately remove her dog from her apartment. The complainant testified that, as a result of the petitioners' retaliatory conduct toward her, she experienced mental anguish during the period of time that she was trapped in her apartment due to the loss of her designated parking space, when she had to go to housing court for the eviction proceedings, and when she moved out of her apartment due to the petitioners' false directives that SDHR had ruled against her and the dog had to be immediately removed (*see Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights*, 35 NY2d 143, 145-146 [1974]; *Matter of Matteo v New York State Div. of Human Rights*, 306 AD2d 484, 485 [2003]). The complainant also showed that the stress caused by the mental anguish exacerbated her physical condition and, on March 24, 2011, she was admitted to the hospital complaining of nausea and experiencing palpitations. The compensatory award must be comparable with awards for similar injuries (*see Matter of Murphy v Kirkland*, 88 AD3d at 796). Under the circumstances of this case, we remit the matter to the SDHR for the imposition of a new award for compensatory damages in an amount not to exceed the sum of $2,500 (*see Matter of Suffolk County Community Coll. v New York State Div. of Human Rights*, 75 AD3d 513, 515 [2010]; *Matter of Palmblad v Gibson*, 63 AD3d 844, 845 [2009]; *State Div. of Human Rights v Dynasty Hotel*, 222 AD2d at 263-264; *Matter of Van Cleff Realty v New York State Div. of Human Rights*, 216 AD2d at 307; *Matter of Cosmos Forms v State Div. of Human Rights*, 150 AD2d 442, 442-443 [1989]).

With respect to the punitive damages award, the SDHR is vested with broad powers to fulfill " '[t]he extremely strong statutory policy of eliminating discrimination' " such that under the circumstances of this case, an award of punitive damages was appropriate (*Matter of Van Cleff Realty v New York State Div. of Human Rights*, 216 AD2d at 307, quoting *Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights*, 35 NY2d at 146; *see Matter of Sherwood Terrace Apts. v New York State Div. of Human Rights*, 61 AD3d 1333, 1334 [2009]; *Matter of Matteo v New York State Div. of Human*

*Rights*, 306 AD2d at 485). However, under the circumstances of this case, we remit the matter to the SDHR for the imposition of a new award for punitive damages in an amount not to exceed the sum of $2,500 (*see e.g. State Div. of Human Rights v Dynasty Hotel*, 222 AD2d at 263-264).

Finally, as punishment for violating the Human Rights Law and to promote the public interest, the imposition of a civil penalty also was appropriate against the petitioners (*see Matter of 119-121 E. 97th St. Corp. v New York City Commn. on Human Rights*, 220 AD2d 79, 88 [1996]). Under the circumstances of this case, we remit the matter to the SDHR for the imposition of a civil penalty against each petitioner in an amount not to exceed the sum of $2,000 (*see generally Matter of ISS Action Sec. v New York City Commn. on Human Rights*, 114 AD3d 943, 944 [2014]; *Matter of 119-121 E. 97th St. Corp. v New York City Commn. on Human Rights*, 220 AD2d at 88-89). Austin, J.P., Cohen, Miller and Duffy, JJ., concur.